UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG DIVISION

KINSALE INSURANCE COMPANY,

    Plaintiff,

vs.                                      CASE NO:  **3:20-CV-8  (Groh)**

JDBC HOLDINGS INC.
d/b/a THE CBD FACTORIES,

    Defendant.
_____/

ELECTRONICALLY FILED
Jan 13 2020
U.S. DISTRICT COURT
Northern District of WV

**KINSALE'S COMPLAINT FOR RESCISSION AND DECLARATORY RELIEF**

KINSALE INSURANCE COMPANY ("Kinsale") files suit against JDBC HOLDINGS INC. d/b/a THE CBD FACTORIES ("JDBC"), and alleges:

**NATURE OF THE ACTION**

1. This action is for rescission and declaratory relief pursuant to 28 U.S.C. § 2201. Kinsale seeks to rescind the policy due to material misrepresentation in JDBC's insurance application and a declaration of no coverage based on JDBC's failure to comply with the conditions of insurance and the application of certain exclusions.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of attorney's fees and costs.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because it is where JDBC is located and the policy was issued.

4. All conditions precedent have occurred, been performed, or have been waived.

## THE PARTIES

5. Kinsale is an Arkansas corporation with a principal place of business in Richmond, Virginia. Kinsale is a surplus lines insurance company that issued a property insurance policy to JDBC.

6. JDBC is a West Virginia corporation with a principal place of business in Charles Town, West Virginia. JDBC is in the business of extracting and processing cannabidiol ("CBD") from hemp.

## COMMON ALLEGATIONS

7. *The insurance application*. On September 5, 2019, JDBC submitted an application for insurance to Kinsale seeking coverage for business personal property located at 471 Cold Storage Road, Charles Town, West Virginia 25414 ("Facility"). The application is attached as Exhibit "A."

8. Within the application's Acord Property Section, JDBC represented: "Sprinkler system being installed."

9. JDBC further represented that the Facility included the following protections "Central alarm, smoke, fire & burglar / video" and "key fobs to access building."

10. Within the application's Hemp/CBD Section, JDBC represented that the security system at the Facility, includes: (1) a central station burglar alarm; (2) interior video cameras; and (3) exterior video cameras.

11. JDBC also represented in the Hemp/CBD Section that "all security measures [are] fully operational during non-business hours."

12. The Acord Property Section was signed by a JDBC officer on September 5, 2019.

13. The Hemp/CBD Section was signed by a JDBC officer on August 31, 2019.

14. **The Kinsale Property Policy**. Based on the representations in JDBC's application, Kinsale issued a Primary Property Policy to JDBC, Policy No. 0100095800-0, effective September 11, 2019 to September 11, 2020 ("Policy"). The Policy is attached as Exhibit "B."

15. Subject to the terms, conditions, limitations and exclusions, the Policy provides coverage for direct physical loss of or damage to the Business Personal Property.

16. The Policy includes a "Protective Safeguards" endorsement (Form IL04 15 04 98) which provides, in pertinent part:

**PROTECTIVE SAFEGUARDS** …

**SCHEDULE**

| Premises Number | Building Number | Protective Safeguards Symbols Applicable |
|---|---|---|
| 1 | 1 | P-1 & P2 |
| Describe Any "P-9": | | |

A. The following is added to the Commercial Property Conditions: …

**Protective Safeguards**

1. As a condition of this insurance, you are required to maintain the protective devices or services listed in the Schedule above.

2. The protective safeguards to which this endorsement applies are identified by the following symbols:

    **"P-1" Automatic Sprinkler System**, including related supervisory services.

    Automatic Sprinkler System means:

    a. Any automatic fire protective or extinguishing system, including connected:

    (1) Sprinklers and discharge nozzles;
    (2) Ducts, pipes, valves and fittings;
    (3) Tanks, their component parts and supports; and
    (4) Pumps and private fire protection mains.

    b. When supplied from an automatic fire protective system:

    (1) Non-automatic fire protective systems; and
    (2) Hydrants, standpipes and outlets.

    **"P-2" Automatic Fire Alarm,** protecting the entire building, that is:

    a. Connected to a central station; or
    b. Reporting to a public or private fire alarm station. …

B. The following is added to the EXCLUSIONS section …

We will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you:

1. Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or

2. Failed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order.

If part of an Automatic Sprinkler System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

17. The Policy includes a "Protective Safeguards - Theft" endorsement (Form PRP20260519) which provides, in pertinent part:

**PROTECTIVE SAFEGUARDS – THEFT** …

**SCHEDULE**

| Prem. No. | Bldg. No. | Protective Safeguard Symbol | P-9 Symbol Description |
|---|---|---|---|
| 1 | 1 | P-9 | 1. Fully operational central station burglar alarm that is activated at all times that your business is closed to the general public except during your normal closing and opening activity. |
| | | | 2. Fully operational interior motion detectors that are activated at all times that your business is closed to the general public except during your normal closing and opening activity. |
| | | | 3. Fully operational interior and exterior video surveillance that is actively monitoring and recording all exterior doors and windows twenty-four hours a day and seven days a week. Video surveillance tapes must be provided to us for the 14 days prior to the loss. |
| | | | 4. At all times that your business is closed to the general public all cannabis stock must be kept locked in an Approved Safe. |
| | | | 5. At all times that your business is open to the general public and during opening and closing, cannabis stock outside of an Approved Safe cannot exceed a wholesale value of $50,000. |
| | | | 6. Approved Safe means: a. a windowless vault room with no more than one access door. The vault room must have a one hour or more fire rating; or b. a metal enclosure or box that is bolted to the floor if it weighs less than 2000 pounds, and has a one hour or more fire rating. |
| | | | 7. A minimum of two (2) individuals, either employees, officers or owners, must be on the premises at all times that your business is open to the public and during your normal closing and opening activity. |

A. The following is added to the:

COMMERCIAL PROPERTY CONDITIONS

**PROTECTIVE SAFEGUARDS**

1. As a condition of this insurance, you are required to have the protective devices, safeguards, procedures or services listed in the Schedule above in place, in complete working order and fully operational.

2. With respect to each location or building, the protective safeguards, procedures or services to which this endorsement applies are identified by the following symbol:

"P-9" The protective safeguards, procedures or services as described in the Schedule.

18.    The Policy includes a "Pollution Exclusion" endorsement (Form PRP3005 0110), which provides, in pertinent part:

<strong>POLLUTION EXCLUSION</strong> …

**COMMERCIAL PROPERTY COVERAGE …**

This Policy does not insure:

1. any loss, damage, cost or expense;

2. any increase in insured loss, damage, cost or expense; or …

which arises from any kind of seepage or any kind of pollution and/or contamination, or threat thereof, whether or not caused by or resulting from a peril insured, or from steps or measures taken in connection with the avoidance, prevention, abatement, mitigation, remediation, cleanup or removal of "any kind of seepage or any kind of pollution and/or contamination" or threat thereof.

The term "any kind of seepage or any kind of pollution and/or contamination" as used in this Endorsement includes but is not limited to:

1. seepage of, or pollution and/or contamination by, anything, including but not limited to, any material designated as a "hazardous substance" by the United States Environmental Protection Agency or as a "hazardous material" by the United States Department of Transportation, or defined as a "toxic substance" by the Canadian Environmental Protection Act for the purposes of Part II of that Act, or any substance designated or defined as toxic, dangerous, hazardous or deleterious to persons or the environment under any other Federal, State, Provincial, Municipal or other law, ordinance or regulation; and

2. the presence, existence, or release of anything which endangers or threatens to endanger the health, safety or welfare of persons or the environment.…

19.    The Policy includes a "Common Conditions – Property" endorsement (Form PRP2017 1018), which provides, in pertinent part:

COMMON CONDITIONS- PROPERTY …

**5. CONCEALMENT, MISREPRESENTATION OR FRAUD**

> If the Insured shall make any material misrepresentations or conceal facts either before or after a loss or make a claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void, and all claims hereunder shall be forfeited

20. **The Chemical Fire**. On October 31, 2019 various items of JDBC's Business Personal Property were damaged as a result of a fire at the Facility.

21. The fire occurred while JDBC was testing certain equipment prior to JDBC commencing operations at the Facility.

22. At the time of the fire, numerous barrels of acetone and methanol were stored at the Facility, including in the room where the fire began.

23. At the time of the fire, a JDBC employee was using a heat gun in close proximity to the acetone and methanol.

24. The extreme heat from the heat gun, in close proximity to combustible materials and/or fumes, caused the fire to break out at the Facility.

25. During the fire, the acetone and methanol caused numerous explosions.

26. As a result of the acetone and methanol within the Facility, the responding fire department was unable to enter the building to extinguish the flames.

27. Instead, a specialty hazardous materials fire department unit from the neighboring state was called to extinguish the fire.

28. Accordingly, the presence of acetone and/or methanol caused, contributed to, or exacerbated, the fire damage at the Facility.

29. **Kinsale's Investigation**. JDBC reported the fire to Kinsale on November 1, 2019.

30. Kinsale promptly acknowledged the claim and began a thorough investigation.

31. During the investigation, Kinsale learned that despite JDBC's representations in the application and the requirements of the Protective Safeguard endorsements:

    a. a centrally monitored alarm system was <u>not</u> installed;
    b. the smoke detectors were <u>non-operational</u>;
    c. the security system was <u>not fully installed</u> and was <u>non-operational</u>;
    d. <u>only two</u> temporary motion sensing cameras were installed in the Facility;
    e. <u>no exterior cameras</u> were installed; and
    f. the sprinkler system was <u>not installed</u> or in the process of being installed;

32. In fact, at the time of the fire, JDBC's fire sprinkler system plans had not yet been submitted to the State of West Virginia for approval. *See* the November 7, 2019 e-mail from Brewer & Company of WV, Inc. and the November 19, 2019 letter from the Office of the State Fire Marshal, attached as Composite Exhibit "C."

## **COUNT I: RESCISSION PURSUANT TO WEST VIRGINIA CODE § 33-6-7**

33. Kinsale incorporates paragraphs 1 through 32.

34. West Virginia Code § 33-6-7 provides in relevant part that:

Misrepresentations, omissions, concealments of facts, and incorrect statements shall not prevent a recovery under the policy unless …

(b) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or

(c) The insurer in good faith would either not have issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise.

35. JDBC misrepresented, omitted, concealed, or incorrectly stated that certain loss mitigation features were installed, operational, or were in the process of being installed at the Facility.

36. These misrepresentations were material to Kinsale's acceptance of the risk, or to the hazard it assumed.

37. Had Kinsale known the truth, it would have not have issued the Policy, or would have issued the Policy on different terms.

38. Accordingly, the Policy should be rescinded and declared void *ab initio* pursuant to West Virginia Code § 33-6-7.

39. Upon the Court's order declaring the Policy void *ab initio*, Kinsale will immediately return the entire premium paid by JDBC.

### COUNT II: NO COVERAGE UNDER THE POLICY'S MISREPRESENTATION PROVISION

40. Kinsale incorporates paragraphs 1 through 39.

41. Under the Common Conditions – Property" endorsement (Form PRP2017 1018), the Policy shall become void, and all claims under the Policy shall be forfeited if the Insured make any material misrepresentations or conceal facts either before or after a loss.

42. JDBC forfeited all claims under the Policy and rendered it void when it concealed facts or made material misrepresentations in its application for insurance.

### COUNT III: NO COVERAGE UNDER THE PROTECTIVE SAFEGUARDS ENDORSEMENTS

43. Kinsale incorporates paragraphs 1 through 32.

44. The Policy includes two Protective Safeguard endorsements that require, as a condition of insurance, that JDBC maintain certain protective safeguards.

45. Because it is undisputed that JDBC failed to comply with the Protective Safeguard endorsements, there is no coverage for the loss.

46. Under the "Protective Safeguards" endorsement (Form IL04 15 04 98), JDBC failed to maintain an "Automatic Sprinkler System" or an "Automatic Fire Alarm" at the Facility, which is required as a condition of insurance.

47. Similarly, under the "Protective Safeguards - Theft" endorsement (Form PRP20260519), JDBC failed to ensure that the Facility had, in complete working order and fully operational, a central station burglar alarm, interior motion detectors, or interior and exterior video cameras actively monitoring and recording all exterior doors and windows, all of which is required as a condition of the insurance.

48. It is also uncontroverted that JDBC knew of the impairment to the "Automatic Sprinkler System" or the "Automatic Fire Alarm" at the Facility but failed to notify Kinsale, which is required by the "Protective Safeguards" endorsement (Form IL04 15 04 98).

## COUNT IV: NO COVERAGE UNDER THE POLLUTION EXCLUSION

49. Kinsale incorporates paragraphs 1 through 32.

50. The presence of acetone and methanol caused, contributed to, or exacerbated, the fire damage at the Facility.

51. Pursuant to 40 C.F.R. 302.4 acetone is a designated hazardous substance by the Environmental Protection Agency.

52. Pursuant to 40 C.F.R. 302.4 methanol is a designated hazardous substance by the Environmental Protection Agency.

53. Accordingly, there is no coverage under the Pollution Exclusion endorsement (Form PRP3005 0110), which excludes coverage for any loss or damage arising out of the seepage, pollution, contamination, or the threat of seepage, pollution, contamination, as a result of the acetone or methanol stored in the Facility.

54. There is likewise no coverage under the express terms of the Pollution Exclusion for any increase in loss or damage arising out of the seepage, pollution, contamination, or the threat of seepage, pollution, contamination.

WHEREFORE, Kinsale respectfully requests this Court:

a. Take jurisdiction and adjudicate the rights of the parties under the Kinsale policy;

b. Rescind the Policy and declare it void *ab initio* under W.Va. Code § 33-6-7;

c. Declare that under the Policy's terms the Policy is void;

d. Declare that under the terms of the Policy, Kinsale has no duty to pay or indemnify JDBC for damages or loss caused by the fire;

e. Award Kinsale all costs incurred in bringing this action; and

f. Award all such other relief as the Court deems just and proper.

January 13, 2020

Respectfully submitted,

**/s/ Vincent J. Palmiotto**
**Vincent J. Palmiotto**
Bar No. 7901
vincent.palmiotto@clydeco.us

CLYDE & CO US LLP
1775 Pennsylvania Avenue, NW,
Suite 400
Washington, DC 20006
T: 202-747-5100