**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**Martinsburg**

**KINSALE INSURANCE COMPANY,**

Plaintiff,

v.                                                          **CIVIL ACTION NO. 3:20-CV-8**
                                                            Judge Bailey

**JDBC HOLDINGS, INC.**
d/b/a The CBD Factories,

Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before this Court are two Motions concerning discovery in the above-caption ed matter–Kinsale Insurance Company's Motion for Protective Order and to Quash Subpoena [Doc. 71], and Defendant's Motion to Compel [Doc. 80]. Both Motions have been fully briefed, and this Court will address the merits of each Motion in turn. For the reason's contained herein, Kinsale Insurance Company's Motion for Protective Order and to Quash Subpoena will be granted, and Defendant's Motion to Compel will be granted in part.

I.      **Plaintiff's Motion for Protective Order and to Quash Subpoena**

A.      **Background**

Plaintiff, pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure, and this Court's Scheduling Order [Doc. 13], moves to quash a document subpoena issued by defendant to nonparty Scottish American Insurance General Agency, Inc. *See* [Doc. 71 at 1].

As identified by plaintiff, this Court entered a Scheduling Order on April 24, 2020, which required all discovery to be completed by January 8, 2021. [Doc. 13]. On January 4, 2021, the parties filed a joint stipulation extending the discovery deadline with respect to certain depositions. [Doc. 58]. More specifically, the joint stipulation extended the discovery deadline to January 29, 2021, but only for the limited purpose of taking the depositions of the specific individuals listed in the stipulation. [Id.]. Moreover, the stipulation expressly provided that it did not extend the discovery deadline "as to any other discovery aside from these depositions." [Id.].

On January 21, 2021, after the discovery conclusion deadline, defendant filed a notice of intent to serve a subpoena for documents on nonparty Scottish American Insurance General Agency, Inc. [Doc. 62].

### B.    Discussion

Rule 16 of the Federal Rules of Civil Procedure "requires that the court presiding over a civil action set a schedule by way of a scheduling order, which can only be modified 'for good cause and with the judge's consent.'" *Nickerson v. State Farm Ins. Co.*, 2011 WL 5119542, at *2 (N.D. W.Va. 2011) (Stamp, J.). Rule 16 further requires that "scheduling orders 'limit the time to join other parties, amend the pleadings, *complete discovery*, and file motions.'" *Id.* (emphasis in original). "Rule 45 subpoenas duces tecum constitute discovery under Rule 26, and are thus subject to the time limitations of Rule 16 Scheduling Orders with only slim exceptions." *Id.* "[S]ubpoenas duces tecum seeking production of documents from third-parties likewise constitute discovery." *Id.*

2

"The time constraints mandated by Rule 16 exist for the purposes of avoiding delay and preventing burden and surprise late in the case as the parties prepare for trial." *Id.* at *3. "Circumventing these discovery deadlines unnecessarily lengthens the discovery process, and diverts the parties' attention, from the post-discovery aspects of preparing a case for trial." *Id.*

Here, plaintiff contends that defendant's subpoena to third-party Scottish American Insurance General Agency, Inc. plainly violates the Court's scheduling order. [Doc. 71-1 at 4]. As indicated by plaintiff and the record, defendant did not file its notice of intent to serve the subpoena until nearly two weeks following the discovery conclusion deadline. [Id.]. Plaintiff's correctly note that the aforementioned joint discovery extension stipulation was limited in scope and extended the discovery deadline only for the purpose of taking enumerated depositions. [Id.]. Therefore, plaintiff argues that the subpoena must be quashed. Further, plaintiff moves for attorney's fees and costs associated with the preparation of the Motion pursuant to Rules 26(c)(3) and 37(a)(5) of the Federal Rules of Civil Procedure.

In Response, defendant asserts that the subject subpoena is nothing more than a means to obtain all responsive documents in connection with the procurement of the insurance policy underlying this litigation. [Doc. 78 at 3]. In its argument against the Motion, defendant contends that plaintiff lacks standing to quash the subpoena because Scottish American is a third-party. [Id.]. In support thereof, defendant alleges that plaintiff has failed to demonstrate a privilege or privacy interest in the documentation sought in the subpoena. [Id. at 4].

Further, defendant claims that the subject subpoena is a non-discovery subpoena because the documentation sought was previously requested. [Id.]. As such, defendant

3

asserts that this Court should permit the use of a subpoena to obtain the documentation "to serve as exhibits in conjunction with information previously discovered pursuant to depositions or answers to interrogatories or the like." [Id.].

This Court agrees with plaintiff and its reliance on *Nickerson*. "Rule 45 subpoenas duces tecum constitute discovery under Rule 26, and are thus subject to the time limitations of Rule 16 Scheduling Orders with only slim exceptions." *Nickerson*, 2011 WL 5119542, at *2. As articulated by Judge Stamp, "[i]n addition to the strong weight of case law favoring the conclusion that Rule 45 subpoenas constitute discovery, logic independently mandates such a finding." *Id.* "Rule 26 specifically includes subpoenas of documents pursuant to Rule 45 as a means of discovery, and in requesting documents through Rule 45, parties seek to obtain information about their case that is held by another party, the identical purpose which drives all types of Rule 26 discovery." *Id.* A slim exception to the rule that a Rule 45 subpoena constitutes discovery and is subject to the deadlines in a scheduling order is where the subpoena is "employed to secure the production at trial of original documents previously disclosed in discovery." *Garvin v. S. States Ins. Exch. Co.*, 2007 WL 2463282, at *3 (N.D. W.Va. 2007) (Kaull, M.J.).

In *Nickerson*, this Court determined the untimely subpoena plaintiffs served on defendant's expert constituted discovery. *Nickerson*, 2011 WL 5119542, at *1. That subpoena requested, *inter alia,* copies of reports, depositions, and independent medical examinations the expert had performed or prepared. *Id.* This Court observed the "plaintiffs [were] seeking to discover information that, by their own admission, they intend[ed] to use to

4

further explore any potential bias on the part of [the expert]." *Id.* at *3 (internal quotations omitted).

Notably, this Court observed plaintiffs did not already have copies of this information in their possession and were not simply seeking originals for use as trial exhibits. *Id.* Additionally, this Court noted that plaintiffs could have obtained the documentation prior to the close of discovery. *Id.*

Here, like in *Nickerson*, the subpoena seeks documentation not already in defendant's possession. By defendant's own characterization, the subpoena is intended as "a due diligence measure to make sure JDBC receives and/or possesses all the documents related to the communications with Scottish American concerning the procurement of the insurance in dispute." *See* [Doc. 78]. However, a review of the subpoena on its face reveals that it seeks the production of eighteen broad categories of documents, including "all documents, correspondence and emails in Scottish American's file related to or involving JDBC." *See* [Doc. 62-1]. Defendant was aware of Scottish American's involvement in the events underlying this action since approximately July 2020 when plaintiff produced copies of its correspondence with Scottish American. [Doc. 71-1 at 3–4]. Under similar circumstances, this Court in *Nickerson* found that the subpoena was untimely and granted defendant's motion for protective order "for that reason." *Nickerson*, 2011 WL 5119542, at *2. This Court reaches the same conclusion here, and the Motion for Protective Order and to Quash Subpoena will be granted due to the untimeliness of the subpoena. However, this Court declines to award plaintiff its requested attorney fees related to the Motion.

## II.      Defendant's Motion to Compel

### A.      Background

Defendant moves this Court for an Order compelling plaintiff to fully answer certain interrogatories, produce certain documents requested in requests for production, and to admit or deny certain requests for admission. [Doc. 80]. According to defendant, these requests seek non-privileged matters relevant to its claims and defenses. [Id.]. Moreover, defendant asserts that plaintiff has failed to substantiate any of its objections to this discovery. [Id.].

In opposition to the Motion, plaintiff contends that (1) the interrogatories exceed the maximum allowable number; (2) the interrogatories and requests for production are plainly oppressive, overly broad, and unduly burdensome; and (3) the interrogatories and requests for production do no seek relevant or non-confidential information. *See* [Doc. 97]. Additionally, plaintiff alleges it is unable to respond to the requests for admission at issue because such request calls for a legal conclusion and is otherwise irrelevant. [Id. at 13].

### B.      Standard of Review

Rule 26(b) of the Federal Rules of Civil Procedure provides that the:

[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

6

Fed. R. Civ. P. 26(b)(1). "In general, information is relevant and, thus, discoverable, if it bears on or reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *See Johnson v. Ford Motor Co.*, 309 F.R.D. 226, 232 (S.D. W.Va. 2015). "Relevance for discovery purposes is defined more broadly than relevance for evidentiary purposes." *See Kidwiler v. Progessive Paloverde Ins. Co.*, 192 F.R.D. 193, 199 (N.D. W.Va. 2000). For this reason, "the discovery rules are given 'a broad and liberal treatment.'" *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.*, 967 F.2d 980, 983 (4th Cir. 1992) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

"Parties must respond truthfully, fully and completely to discovery or explain truthfully, fully and completely why they cannot respond. Gamesmanship to evade answering as required is not allowed." *Fisher v. Baltimore Life Ins. Co.*, 235 F.R.D. 617, 622 (N.D. W.Va. 2006). All objections must be stated with specificity and any objection not raised is waived. *Id.* The "mere recitation of the familiar litany that an interrogatory or a document production request is 'overly broad, burdensome, oppressive and irrelevant' will not suffice." *Id.* at 629. "The party opposing a motion to compel bears the burden of showing why it should not be granted." *Cornett Management Co., LLC v. Lexington Ins. Co.*, 2007 WL 1140253, at *2 (N.D. W.Va. April 17, 2007).

C.    **Discussion**

As an initial matter, this Court will examine whether the interrogatories at issue exceed the maximum allowable number prescribed by the Federal Rules of Civil Procedure. Specifically, Rule 33 of the Federal Rules of Civil Procedure provides "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25

7

written interrogatories, including all discrete subparts." Fed. R. Civ. P. 33(a)(1).  The key

inquiry in counting interrogatories is whether the subparts to an interrogatory are discrete.  Id.

at cmt. 1993 amend. "Thus, it would appear that an interrogatory containing subparts directed

at eliciting details concerning a common theme should be considered a single question,

although the breadth of the area inquired about may be disputable."  *See* 8B, Richard L.

Marcus, Fed. Prac. & Proc. Civ. § 2168.1 (3d ed.).  Plaintiff, as the objecting party, bears the

burden to show that defendant's prior interrogatories contained discrete subparts, and that

as a result the interrogatories at issue in this motion exceed the number permitted by the rules

and the parties' discovery plan. *See Patrick v. Teays Valley Trustees, LLC*, 297 F.R.D.

248, 256 (N.D. W.Va. 2013) ("the party resisting discovery has the burden of clarifying,

explaining and supporting its objections.").

A review of the interrogatories in question leads this Court to conclude that the

requests do not contain discrete subparts; rather, the interrogatories generally ask a "yes" or

"no" question, and if the answer is "yes" they require that certain additional details be provided

in support of that answer.  The subparts appear to be directed at eliciting details concerning

commonalities related to the initial questions posed in the interrogatories and, as such, this

Court finds that defendant did not exceed the interrogatory limited under Fed. R. Civ. Pro. 33.

This Court will now turn to each piece of discovery in dispute.

### 1.   Interrogatory 17

17.   State whether Kinsale currently writes, or has ever previously written, cannabis
commercial property polices for industrial hemp growers or extraction
operations that <u>do not</u> include a "central station burglar alarm," "interior motion

8

detectors," and/or "interior and exterior video surveillance" as part of the policy's "P-9" protective safeguards condition or exclusion (whether as part of Kinsale's base coverage form or through an endorsement, such as form "PRP2026 0519," entitled "Protective Safeguards – Theft"). If the answer is yes:

    a.    state whether Kinsale currently does so and the year(s) in which Kinsale has previously done so; and

    b.    set forth in detail the conditions under which Kinsale writes cannabis commercial property polices for commercial hemp growers or extraction operations without a "central station burglar alarm," "interior motion detectors," and/or "interior and exterior video surveillance" as part of the policy's "P-9" protective safeguards – theft condition or exclusion, including whether the omission of such condition or exclusion changes the premium charged by Kinsale for the policy and by how much.

[Doc. 80-1 at 4]. Plaintiff objected to this interrogatory on the basis that it seeks information that is not relevant to any claim or defense, and that the interrogatory is not proportional to the needs of the case. [Id. at 4–5]. As argued by defendant, the information requested by this interrogatory "goes directly to the merits of Kinsale's recision claim[.]" [Id. at 6]. However, this Court previously dismissed plaintiff's recision claim in its Sealed Memorandum Opinion and Order. *See* [Doc. 99]. As such, Interrogatory 17 is moot and requires no additional response.

9

### 2.   Interrogatory 18

18.   State whether Kinsale currently writes, or has ever previously written, commercial property policies (of any property class, including cannabis or industrial hemp) that <u>do not</u> include a "P-1" or "P-2" protective safeguards condition or exclusion (whether as part of Kinsale's base coverage form or through an endorsement, such as form "IL 04 15 04 98," entitled "Protective Safeguards"). If the answer is yes:

   a.   state whether Kinsale currently does so and the year(s) in which Kinsale has previously done so; and

   b.   set forth in detail the conditions under which Kinsale writes commercial property policies without a "P-1" or "P-2" protective safeguards condition or exclusion, including whether the omission of such condition or exclusion changes the premium charged by Kinsale for the policy and by how much.

[Doc. 80-1 at 7]. Like Interrogatory 17, plaintiff objects to Interrogatory 18 based on relevancy, disproportionality, overbreadth, and undue burden. *See* [Doc. 97 at 4–5]. As noted by defendant, this interrogatory seeks information from plaintiff concerning whether it required similar protective safeguards from other commercial insureds as a condition to obtaining coverage. [Doc. 80-1 at 8]. Defendant contends that if plaintiff makes exceptions to the protective safeguards requirement in other instances, this would support a general business practice, a factor related to defendant's claims for bad faith and punitive damages. [Id.].

10

This Court agrees with plaintiff that this interrogatory essentially asks plaintiff to review every previously issued commercial property policy it has ever issued, which is disproportionate, over broad, and unduly burdensome.  Plaintiff contends, through affidavit, that responding to this discovery request would require the review of approximately 74,000 files at a cost of over $6,000,000 in employee time.  *See* [Doc. 97-2].  Moreover, plaintiff avers that analyzing, redacting, and preparing responsive documents for production could require it to spend approximately $21,000,000.  *See* [Doc. 97-3].

However, defendant subsequently limited the scope of its request to 429 cannabis commercial property files identified by plaintiff in prior discovery.  *See* [Doc. 80-4].  The Court finds that this limitation in scope results in a reasonable, proportional request that is tailored to the needs of defendant in this matter.  While plaintiff cites to confidentiality concerns concerning these property files, this Court notes that the parties previously entered into a Confidentiality Agreement and Protective Order [Doc. 20], which would permit plaintiff to designate all of these documents as "confidential" thereby preventing disclosure.

In consideration of the foregoing, this Court finds that providing the requested 429 cannabis commercial property files under a confidential designation, leaving the time and expense of reviewing those files to defendant, satisfies and resolves the parties' dispute in regards to Interrogatory 18.  This Court so orders.

### 3.      Interrogatory 19

19.      Other than JDBC, in the last five (5) years has Kinsale received any application, or any request to bind coverage for any application, for commercial property insurance coverage (of any property class, including cannabis or industrial

hemp) in which the application materials or the information generated through Kinsale's underwriting process showed that the applicant did not have "P-1" or "P-2" protective safeguards fully installed either at the time of application or at the time of requested bind? If the answer is yes, for each year:

    a.      state the total number of such applications and bind requests;

    b.      state the number of applications that Kinsale rejected and the number of bind requests that Kinsale refused; and

    c.      state the number of applications that Kinsale accepted, bound coverage, and issued the requested policy.

[Doc. 80-1 at 9]. Given the similarity of the arguments and objections concerning this interrogatory to Interrogatory 18, this Court adopts its analysis and order contained in subparagraph "2. Interrogatory 18" with respect to Interrogatory 19.

    **4.     Interrogatory 20**

20.    Other than JDBC, in the last five (5) years has Kinsale received any application, or any request to bind coverage for any application, for cannabis commercial property insurance coverage for industrial hemp growers or extraction operations in which the application materials or the information generated through Kinsale's underwriting process showed that the applicant did not have a "central station burglar alarm," "interior motion detectors," and/or "interior and exterior video surveillance" fully installed either at the time of application or at the time of requested bind?  If the answer is yes, for each year:

    a.      state the total number of such applications and bind requests;

      b.      state the number of applications that Kinsale rejected and the number

             of bind requests that Kinsale refused; and

      c.      state the number of applications that Kinsale accepted, bound

             coverage, and issued the requested policy.

[Doc. 80-1 at 10]. Given the similarity of the arguments and objections concerning this interrogatory to Interrogatory 18, this Court adopts its analysis and order contained in subparagraph "2. Interrogatory 18" with respect to Interrogatory 20.

      **5.      Interrogatory 21**

21.      Other than JDBC, in the last five (5) years has Kinsale ordered an inspection

      of a new commercial property insurance account (of any property class,

      including cannabis or industrial hemp) and found non-compliance with any

      protective safeguards conditions included in the insured's policy? If the answer

      is yes, for each year:

      a.      state the total number of accounts in which Kinsale's inspection found

             non-compliance;

      b.      state the number of accounts where Kinsale gave written notice of

             noncompliance to the broker, the insured, and/or the insured's agent;

             and

      c.      state the number of accounts where Kinsale issued direct notice of

             cancellation for failure to comply with the policy's terms and conditions.

[Doc. 80-1 at 11–12].  Given the similarity of the arguments and objections concerning this interrogatory to Interrogatory 18, this Court adopts its analysis and order contained in subparagraph "2.  Interrogatory 18" with respect to Interrogatory 21.

### 6.    Request for Production 31

31.    Produce a complete copy of all notes, estimates, analyses, or any other document or tangible thing generated by Plaintiff, or by anyone hired by Plaintiff, as a result of the site inspections conducted on July 27, 2020 and October 27-30, 2020.

[Doc. 80-1 at 13].  Although plaintiff largely agreed to provide the majority of the material responsive to this request, defendant contends it is entitled to the disclosure of certain expert notes prepared by plaintiff's expert, Zyad Jabal, P.E., identified in its privilege log.  [Id.].  Mr. Jabal is an engineer with Rimkus Consulting, whom plaintiff has disclosed as a testifying expert regarding the condition of defendant's damaged equipment and who conducted two different inspections of defendant's equipment for the express purpose of evaluating the condition of those items.  [Id.].

As stated in plaintiff's privilege log, the content of Mr. Jabal's notes "ultimately compris[e] or form [] part of [his] report."  Plaintiff asserts that Mr. Jabal's notes are work product under Federal Rule of Civil Procedure 26(b)(4), citing *Int'l Aloe Science Council, Inc. v. Fruit of the Earth, Inc.*, 2012 WL 1900536, at *2 (D. Md. May 23, 2012).  *See* [Doc. 80-1 at 14].  However, this Court agrees with defendant in that the expert notes at issue in *Int'l Aloe Science Council* were a critique of the opposing expert's report and a list of questions to ask the opposing expert in his deposition.  *Id.*  Because the notes at issue in that case

14

were not prepared to develop opinions that would be presented at trial, but were instead drafted to assist counsel in attacking the opposing party's expert, the notes were protected work product. *Id.*

The protected notes in *Int'l Aloe Science Council* are materially different from Mr. Jabal's notes because, by plaintiff's own admission in its privilege log, the notes ultimately comprised or formed part of his report. As such, the notes are discoverable and defendant is entitled to disclosure of the notes, subject to the parties Confidentiality Agreement and Protective Order. *See Republic of Ecuador v. Hinchee*, 741 F.3d 1185 (11th Cir. 2013).

### 7.    Request for Production 36

36.    As to each application and/or bind request response to interrogatory 19 above, produce a complete copy of the application (including any supplements or other attachments) and underwriting file for said applicant, including all communications between Kinsale and the applicant and any agent or broker involved in the application process. If the application or bind request was denied, include in your response any written denial thereof. If the application or bind request was accepted, include in your response the as-issued policy. You may redact personal identifying information of the applicant (names, addresses, SS#/TIN, financial account information, etc.) so long as each applicant's materials is distinguishable and so long as Kinsale does not redact any information that was material to its decision.

[Doc. 80-1 at 15]. This request for production merely asks plaintiff to produce the documentation this Court has found responsive to Interrogatory 19. Having found that the

production of the aforementioned 429 cannabis commercial property files under a confidential designation is warranted, no additional response to this request for production is required.

### 8.    Request for Production 37

37.    As to each application and/or bind request responsive to interrogatory 20 above, produce a complete copy of the application (including any supplements or other attachments) and underwriting file for said applicant, including all communications between Kinsale and the applicant and any agent or broker involved in the application process.  If the application or bind request was denied, include in your response any written denial thereof.  If the application or bind request was accepted, include in your response the as-issued policy.  You may redact personal identifying information of the applicant (names, addresses, SS#/TIN, financial account information, etc.) so long as each applicant's materials is distinguishable and so long as Kinsale does not redact any information that was material to its decision.

[Doc. 80-1 at 16].   This request for production merely asks plaintiff to produce the documentation this Court has found responsive to Interrogatory 20.  Having found that the production of the aforementioned 429 cannabis commercial property files under a confidential designation is warranted, no additional response to this request for production is required.

### 9.    Request for Production 38

38.    As to each account responsive to interrogatory 21 above, produce a complete copy of the application (including any supplements or other attachments) and underwriting file for said account, the inspection report, the as-issued policy,

16

and all communications between Kinsale and the inspector, the insured, and/or

any agent or broker about the inspection or its outcome. If Kinsale gave anyone

written notice of noncompliance, include in your response the documents taht

constituted that notice and any subsequent communications between Kinsale

and the insured and/or any agent or broker. If Kinsale issued direct notice of

cancellation for failure to comply with the policy's terms and conditions, include

in your response the documents that constituted that notice and any subsequent

communications between Kinsale and the insured and/or any agent or broker.

You may redact personal identifying information of the applicant/insured

(names, addresses, SS#/TIN, financial account information, etc.) so long as

each account is distinguishable and so long as Kinsale does not redact any

information that was material to its decisions.

[Doc. 80-1 at 17].   This request for production merely asks plaintiff to produce the

documentation this Court has found responsive to Interrogatory 21. Having found that the

production of the aforementioned 429 cannabis commercial property files under a confidential

designation is warranted, no additional response to this request for production is required.

### 10.    Request for Admission 1

1. Admit that Plaintiff's agents or representatives damaged various items of JDBC's

property during the site inspections conducted October 27–30, 2020.  [Doc. 80-1 at 18].

Plaintiff objected to this Request on the basis that it seeks information that is not relevant to

any claim or defense in this litigation. [Id. at 18–19]. This Court agrees. In this suit, defendant

is claiming all of its equipment sustained a total loss from the subject fire. Having already

17

prevailed on the issue of coverage, defendant cannot pursue a claim for damage to equipment, which this Court already found is a covered, total loss under the language of the policy. Accordingly, no additional response is required.

### 11. Request for Admission 2

2. Admit that Plaintiff is responsible for paying JDBC for the damages caused by Plaintiff, or anyone hired by Plaintiff, during the site inspections conducted October 27–30, 2020.

[Doc. 80-1 at 19]. Plaintiff objected to this Request on the basis that it seeks information that is not relevant to any claim or defense in this litigation. [Id.]. This Court agrees. In this suit, defendant is claiming all of its equipment sustained a total loss from the subject fire. Having already prevailed on the issue of coverage, defendant cannot pursue a claim for damage to equipment, which this Court already found is a covered, total loss under the language of the policy. Accordingly, no additional response is required. Having found both meritorious and unmeritorious arguments contained in Defendant's Motion to Compel, this Court declines to award attorney's fees with respect to the Motion.

## III. Conclusion

For the reasons contained herein, Kinsale Insurance Company's Motion for Protective Order and to Quash Subpoena [**Doc. 71**] is **GRANTED**. Defendant's Motion to Compel [**Doc. 80**] is **GRANTED IN PART**.

It is so **ORDERED**.

The Clerk is directed to provide copies of this Order to all counsel of record.

18

**DATED:** April **20**, 2021.

**JOHN PRESTON BAILEY**
**UNITED STATES DISTRICT JUDGE**